# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>(1) BLACK FOREST DÉCOR, LLC,<br><br>Defendant. | Civil Action No. 19-cv-894-SLP<br><br>**AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMAND** |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of disability, and to provide appropriate relief to Barbara Berry, who was adversely affected by such practices. The Equal Employment Opportunity Commission alleges that the Defendant Black Forest Décor, LLC, subjected Berry to unlawful terms and conditions of employment, and subsequently terminated her because of her disability, in violation of the ADA, as amended.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. §12117(a), which incorporates by reference 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964, as amended, ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. Venue is proper in this Court because the employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Western District of Oklahoma.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) and Section 503(c) of the ADA, 42 U.S.C. §12117(a) and §12203(c), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Black Forest Décor, LLC, ("Defendant") has continuously been an Oklahoma limited liability company doing business in the State of Oklahoma and the City of Enid, and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. §12111(7), which incorporate by reference Sections 701(b), (g) and (h) of Title VII, 42 U.S.C.§ 2000e(b), (g) and (h).

6. At all relevant times, Black Forest has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than 30 days prior to the institution of this lawsuit, Barbara Berry ("Berry") filed a charge of discrimination with the Commission alleging violations of the ADA by Defendant.

8. On August 9, 2019, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA was violated and inviting it to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

9. The Commission communicated with Defendant by correspondence, email and other means, on numerous occasions, including on August 16, August 23, September 5, and September 9, to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. On September 10, 2019, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from the Defendant a conciliation agreement acceptable to the Commission.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

12. Since at least January 1, 2018, Defendant has engaged in unlawful employment practices in violation of the ADA, 42 U.S.C. § 12112(a) and (b), by subjecting Berry to

unlawful terms and conditions of employment and by discharging her because of her disability.

13. Since August 30, 2010, Berry was employed full time (40 hours/week) by Defendant as a shipping/receiving clerk at its Enid warehouse.

14. At all relevant times, Berry was a qualified individual with a disability, as defined by Section 3(1)(A), and (C) of the ADA, 42 U.S.C. § 12102(1)(A), and (C). Specifically, Berry had an "actual" disability as defined by Section 3(A) and was "regarded as" having a disability as defined by Section 3(C).

15. At all relevant times, Berry's supervisor was Diane Johnson, operations manager for Defendant.

16. Berry was a good employee without any disciplinary problems or attendance problems.

17. At the relevant times as discussed below, Berry suffered from gallstones, a disease of her gallbladder, a condition which substantially limited one or more of her major life activities, including but not limited to her ability to eat, sleep and concentrate, and also substantially limited the operation of her major bodily functions, including but not limited to her digestive functions and the operation of her gallbladder, an individual organ within her body's digestive system.

18. Beginning in January 2018, Berry began to experience increasingly constant and severe abdominal pain and nausea, which, with increasing frequency over time – the

symptoms progressed from a few times per week, to several times per week, to daily, to hourly, to constantly – caused her to occasionally vomit throughout the day, sometimes at work, and, at night, causing her to wake several times throughout her normal six to eight-hours of sleep.

19. Toward the end of January 2018, the frequency and severity of Berry's pain and nausea was such that she was unable to hold down and digest food or liquids, and unable to sleep for any meaningful duration – waking up more frequently than before to vomit each night – and was unable to sleep at all in the few days before receiving medication on Friday, February 2.

20. Over the majority of this time period, Berry experienced a constant dull pain in her abdomen – which she described as feeling as if she had been punched in the stomach, and which intensified into sharp, shooting pains after she ingested food or liquid, except for very small sips of water – which, coupled with overwhelming nausea, caused her to have to vomit, typically within 15 minutes after eating.

21. As her symptoms worsened over January and into early February, Berry lost thirty-five pounds.

22. Berry's increasingly frequent and severe bouts of pain and nausea substantially impaired her ability to eat, sleep and maintain a constant weight; nevertheless, she continued to work through January 31, 2018.

23. On February 1 and 2, Berry's abdominal pain and nausea intensified, such that, for these two days, she could do little more than sit up and wait to vomit throughout the day and night.

24. For those two days, the severity of symptoms had increased to the point where Berry could not eat, sleep, concentrate nor perform day-to-day functions such as driving (specifically, driving her daughter to and from work, picking up her grandchildren from daycare, driving herself to and from work), cooking, cleaning, walking her dogs, running errands, house chores, etc.

25. On Thursday, February 1, 2018, Berry again woke up vomiting. She was scheduled to work this day and called Johnson to report that she was vomiting and was going to see a doctor and thus was unable to work that day.

26. That morning, Berry went to an urgent care facility where, after she was seen and advised to go to the Emergency Room (ER), she was provided a letter from Laelini Baca APRN-CNP clearing her to return to work on Tuesday, February 6, 2018.

27. On Friday, February 2, Berry again woke up with nausea. At her request, a friend called Johnson to report that Berry was not better and was going to the ER. That day, Berry went to the ER where she was examined, prescribed medication to treat her nausea and pain, and scheduled for an ultrasound on Friday, February 9.

28.     On Monday, February 5, Berry called work and spoke to Johnson, and informed her that she was feeling better and that her pain and nausea were under control as a result of medication prescribed to her by the ER doctor. Berry told Johnson that the ER doctor thought she needed gallbladder surgery, but that it was not certain; further, Berry advised that she had a release to return to work for the next day, February 6.

29.     Defendant did not request to see Berry's medical release to return to work.

30.     Defendant did not request Berry to provide any medical records or documentation concerning her medical condition or treatment.

31.     Nevertheless, on Monday, February 5, Johnson instructed Berry not to come to work until she heard from Johnson and until after Johnson had conferred with Human Resources (HR).

32.     Later that day, Johnson called Berry and stated that she had spoken to HR, and that Defendant had placed Berry on unpaid leave until her surgery because Defendant did not want to be liable if anything happened to Berry while she was working.

33.     Despite not reviewing either Berry's medical release to work or any medical records or documentation concerning her medical condition or treatment, Johnson advised Jason Dupus, the Defendant's owner and CEO, that while Berry had no medical restrictions on working, Johnson doubted Berry's ability to return to work.

34. After Berry was put on unpaid medical leave, Defendant hired a temporary worker, Derrik Brown, to help perform the job duties of both Berry and another warehouse worker who had been discharged.

35. On the morning of Friday, February 9, 2018, Berry met with another physician, who examined Berry and diagnosed her as suffering from numerous gallstones in her gallbladder.

36. On February 13, Berry met with her surgeon who also diagnosed her with gallstones and scheduled her for gallbladder removal surgery on March 12.

37. Berry's surgeon determined, and told her, that surgery was her only option for her health to improve and that, absent surgery, she risked her gallbladder rupturing which could be life-threatening.

38. Berry obtained from her physician a letter dated February 14, 2018, which released her to return to work without any restrictions as of that day.

39. On Wednesday, February 14, Berry called Johnson and, when nobody answered, left a voice mail in which she confirmed that she needed to have gallbladder surgery and informed Johnson of the date of her surgery.

40. Accordingly, by February 14, Berry had made Defendant aware that she was suffering from gallbladder related medical issues for which she had been allowed unpaid time off work on February 1, 2, 5, 9 and 13, and that she would need a brief period of time off for surgery and recovery beginning March 12, but she was otherwise not medically restricted from working.

41. On March 1, 2018, Berry received a letter from Defendant dated February 21, 2018, terminating her employment for allegedly having exhausted the unpaid leave of absence that she had been granted, and because she was allegedly ineligible for any additional leave of absence provided by federal law or under company policy, and was unable to presently return to work.

42. However, at the time of her termination, Berry had accrued sufficient leave to cover her disability-related absences, and she had been medically cleared to return to work on February 6 and February 14, weeks prior to the date of the letter.

43. The termination letter was the first and only communication by Defendant to Berry since February 5 when Johnson informed Berry that she was being placed on unpaid leave until her surgery.

44. On March 5, 2018, Johnson advised Dupus that Defendant can operate on current staffing until August 2018, without hiring someone to permanently replace Berry.

45. Berry's gallbladder was surgically removed on March 12, 2018; upon removal, Berry's surgeon told her that her gallbladder's condition was "the worst he had ever seen."

## COUNT I
### (ADA – Discrimination as to Berry's Terms, Conditions and Privileges of Employment)

46. The Commission repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs in this Complaint as if fully set forth herein.

47. Defendant engaged in unlawful employment practices in violation of Section 102(a) and (b) of the ADA, 42 U.S.C. § 12112(a) and (b), by denying Berry terms, conditions and privileges of employment because she has an actual disability and/or because Defendant regarded her as disabled.

48. Berry informed Defendant of her disability, medical appointments, and need for surgery.

49. Berry also informed Defendant that her doctor had released her to work without restrictions beginning February 6 up until the date of her March 12 gallbladder surgery, and she requested to work until that surgery.

50. Defendant unilaterally placed Berry on unpaid leave, even though she was able to work without restrictions, until she was subsequently fired.

51. Defendant did not place employees without a disability on unpaid leave when they were able to work.

52. The effect of the practices complained of herein has been to deprive Berry of equal employment opportunities and otherwise adversely affect her employment status because she has an actual disability and/or because Defendant regarded her as disabled.

53. The unlawful employment practices complained of herein were intentional.

54. The unlawful employment practices complained of herein were committed with malice or with reckless indifference to the federally protected rights of Berry, who was aggrieved by the discriminatory practices.

## COUNT II
## (ADA – Termination)

55. The Commission repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs in this Complaint as if fully set forth herein.

56. Defendant engaged in unlawful employment practices in violation of Section 102(a) and (b) of the ADA, 42 U.S.C. § 12112(a) and (b), by terminating the employment of Berry because she has an actual disability and/or because Defendant regarded her as disabled.

57. The effect of the practices complained of herein has been to deprive Berry of equal employment opportunities and otherwise adversely affect her employment status because she has an actual disability and/or because Defendant regarded her as disabled.

58. The unlawful employment practices complained of herein were intentional.

59. The unlawful employment practices complained of herein were committed with malice or with reckless indifference to the federally protected rights of Berry, who was aggrieved by the discriminatory practices.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

A. Enter declaratory judgment pursuant to 28 U.S.C. § 2201(a) that the Defendant unlawfully discriminated against Barbara Berry because of her disability in violation of the ADA, 42 U.S.C. § 12112(a) and (b), thus entitling her to damages.

B.  Grant a permanent injunction enjoining Defendant, its agents, servants, employees, attorneys, officers, assigns, and all persons in active concert or participation with it, from engaging in any retaliation and disability discrimination against applicants and employees, and engaging in any other employment practices that discriminates on the basis of disability.

C.  Order Defendant to institute and carry out policies, practices and programs which provide equal employment opportunities for all employees and which eradicate the effects of its past and present unlawful employment practices.

D.  Order Defendant to make whole Barbara Berry by providing appropriate back pay, lost benefits and prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices, including but not limited to reinstatement or front pay in lieu of reinstatement.

E.  Order Defendant to make whole Barbara Berry by providing compensation for past and future pecuniary and non-pecuniary losses resulting from the unlawful employment practices described above, including but not limited to compensatory damages for emotional distress, in amounts to be determined at trial.

F.  Order Defendant to pay Barbara Berry punitive damages for its malicious conduct or reckless indifference to the federally protected rights of Berry as described above, in amounts to be determined at trial.

G.   Grant such further relief as the Court deems necessary and proper in the public interest.

H.   Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

SHARON FAST GUSTAFSON
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

ANDREA G. BARAN, MO Bar No. 46520
Regional Attorney

C. FELIX MILLER, MO Bar No. 28309
Supervisory Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
St. Louis District Office
1222 Spruce St., Rm. 8.100
St. Louis, Missouri 63103
Office: 314-539-7910
andrea.baran@eeoc.gov
felix.miller@eeoc.gov

/s/ Patrick J. Holman
PATRICK J. HOLMAN, OBA No. 21216
Senior Trial Attorney

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Oklahoma City Area Office

>215 Dean A. McGee Ave., Suite 524 Oklahoma City, OK 73102
>(405) 231-4363 (telephone)
>(405) 231-4375 (fax)
>patrick.holman@eeoc.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2019, I filed the attached document with the Clerk of Court. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System, to include:

Christopher S. Thrutchley, OBA 15859
cthrutchley@gablelaw.com
Paula M. Williams, OBA 30772
Pwilliams@gablelaw.com
Gerard D'Emilio, OBA 33496
gdemilio@gablelaw.com
Gable Gotwals
**Attorneys for Defendant**
**Black Forest Décor LLC**

>*/s/ Patrick J. Holman*
>Patrick J. Holman